NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ROBERT SWIFT,<br><br>                    Plaintiff,<br><br>v.<br><br>RAMESH PANDEY, et al.,<br><br>                    Defendants. | Civil Action No. 13-649 (JLL)<br><br>**OPINION** |

**LINARES, District Judge.**

This matter comes before the Court by way of Defendant Ramesh Pandey's motion to dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure [Docket Entry No. 20]. The Court has considered the submissions made in support of and in opposition to the instant motion. No oral argument was heard. *See* Fed. R. Civ. P. 78. For the reasons that follow, Defendant's motion to dismiss is granted. Counts Six (fraud) and Seven (conversion) are dismissed *with* prejudice. Counts One, Two, Three, Four, Five, Eight and Nine are dismissed *without* prejudice.

**BACKGROUND**[1]

Plaintiff's Complaint was filed on January 31, 2013. This Court's jurisdiction is premised on 28 U.S.C. § 1332. According to the Complaint, Plaintiff, Robert Swift ("Swift"), purchased all the right, title, and interest to all assets of Xechem International, Inc. ("Xechem") and Xechem, Inc. at an auction at an unspecified time. (Compl. ¶ 13). These assets included any

---

[1] The Court accepts the following facts asserted in Plaintiff's Complaint as true solely for purposes of this motion.

1

and all right, title and interest to Xechem Pvt. Limited and Xechem Pharmaceuticals Nigeria, Ltd. (*Id.*)  Defendant Ramesh Pandey ("Ramesh") was the Founder, Chief Executive Officer, President and Treasurer of Xechem from 1994 until July 2007.  (*Id.* ¶ 15).  Ramesh was Director of Xechem from 1994 until January 29, 2010.  (*Id.*)

On May 29, 2007, Xechem's Board of Directors discovered that Ramesh had spent more than $4 million in less than two months.  (*Id.* ¶ 27).  These expenses included a $300,000 expansion of his office.  (*Id.*).  At the same meeting, the Board voted to limit Ramesh's spending authority to $5,000 unless he obtained the signature of at least one member of the Board.  (*Id.* ¶ 28).  This excluded normal payroll, rent or "other recurring items."  (*Id.*).  In July 2007, Ramesh was removed as the Chief Executive Officer, President, and Treasurer of Xechem by the Board of Directors.  (*Id.* ¶ 29).  In September 2007, Xechem discovered that Ramesh had signed checks in excess of $5,000 without the required signature.  (*Id.* ¶ 30).  According to the Complaint, Ramesh had signed checks to each of the defendants—the majority of whom are family members—in the following amounts: Bhuwan: $7,752.13, Abhilasha: $14,617, Renuka: $151,875, Rohit: $37,082.22, Isaac: $48,777.78, and Gopal: $6,690.  In addition, Ramesh signed checks to himself, as well as Xechem's bookkeeper Amit, Ramesh's personal attorney, the National Institute of Pharmaceutical Research and Development, Ramesh's brother Bhairab, and Ramesh's friend Tara.  (*Id.* ¶¶ 16-21; 34-43).  In total, Ramesh signed checks "to friends and family" for $605,639.87.  (*Id.*  ¶ 45).  This amount equaled more than 28% of Xechem's available cash as of May 29, 2007.  (*Id.*).

Plaintiff alleges that Defendants Ramesh, Bhuwan, Abhilasha and Renuka were negligent and breached their fiduciary duty to Xechem when they declined to disclose "any self-dealing in any transaction to the Board of Directors . . . ."  (*Id.* ¶¶ 48, 56, 61, 66).  Plaintiff also alleges that

Defendants purposefully concealed the fact that they received money from Xechem. (*Id.* ¶¶ 70-74). Finally, the Plaintiff alleges that the Defendants have exercised dominion and control over Xechem's monies and have been unjustly enriched through this conversion of property that continues to be "wrongfully retained." (*Id.* ¶¶ 76-86, 90).

In light of the foregoing, Plaintiff's Complaint asserts nine (9) causes of action: (1) Breach of Fiduciary Duty by Ramesh; (2) Ultra Vires Act; (3) Breach of Fiduciary Duty and Duty of Loyalty by Bhuwan; (4) Breach of Fiduciary Duty and Duty of Loyalty by Abhilasha; (5) Breach of Fiduciary Duty and Duty of Loyalty by Renuka; (6) Fraud; (7) Conversion; (8) Disbursement of Money; and (9) Disgorgement of Unlawful Profits. (*Id.* ¶¶ 46-90).

## **LEGAL STANDARD**

For a complaint to survive dismissal, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

In determining the sufficiency of a complaint, the Court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). But, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. Thus, legal conclusions draped in the guise of factual allegations may not benefit from the presumption of truthfulness. *Id.*

3

**DISCUSSION**

Defendant Ramesh Pandey now seeks dismissal of all claims asserted against him in Plaintiff's Complaint on various grounds. In particular, Defendant Ramesh Pandey raises three overarching arguments: (1) Plaintiff is barred from pursuing any tort claims against any of the Defendants because New Jersey's public policy prohibits the assignment of pre-judgment tort claims of any kind, and (2) Plaintiff's fiduciary duty claims are time-barred, and (3) in any event, each claim asserted in Plaintiff's Complaint fails to meet the Rule 8(a) pleading requirement.

**1.      Tort Claims**

Defendant Ramesh Pandey argues that Plaintiff lacks standing to pursue Counts Six (fraud) and Seven (conversion) because "the purported assignment of them from Xechem's bankruptcy trustee to Swift was void as against New Jersey's public policy." (Def. Br. at 10). This Court agrees that "New Jersey courts have consistently held that, as a public policy matter, tort claims cannot be assigned before judgment." *Integrated Solutions, Inc. v. Serv. Support Specialties, Inc.*, 124 F.3d 487, 490 (3d Cir. 1997); *see Costanzo v. Costanzo*, 248 N.J. Super. 116, 121 (App. Div. 1991) ("[I]n New Jersey, as a matter of public policy, a tort claim cannot be assigned."); *see, e.g., In re O'Dowd,* 233 F.3d 197, 201 (3d Cir. 2000) ("A true purchase of the omitted claims would have been void under the New Jersey common law prohibition against assigning prejudgment tort claims.").[2]

---

[2] *But see Kimball Int'l Inc. v. Northfield Metal Prods*., 334 N.J. Super. 596, 612 (App. Div. 2000) ("Except for this prohibition against the assignment of tort claims, a party is generally allowed to assign a claim for money damages.").

Plaintiff does not expressly dispute that: (a) he asserts the tort claims of fraud and conversion on behalf of Xechem[3] and only as assignee of Xechem's rights and/or interests; or (b) a pre-judgment tort claim cannot be assigned under New Jersey law. *See Integrated Solutions,* 124 F.3d at 490; *Costanzo,* 248 N.J. Super. at 121. Nor does Plaintiff dispute that New Jersey law applies to his tort claims.[4] In light of the foregoing, Plaintiff has failed to state a claim of fraud or conversion that is plausible on its face. *See, e.g., Conopco, Inc. v. McCreadie*, 826 F. Supp. 855, 867 (D.N.J. 1993) ("It is clear that under New Jersey law, choses in action arising out of tort are not assignable prior to judgment. Because Conopco asserts its claims of professional negligence and malpractice only as an assignee, those tort claims must fail as a matter of law."). Counts Six and Seven of Plaintiff's Complaint are hereby dismissed *with* prejudice.

2.  **Rule 8(a)**

The Court has carefully reviewed the remaining counts of Plaintiff's Complaint and agrees that they fail to comply with the requirements of Rule 8(a) for the following reasons.

First, it is not entirely clear to the Court which counts of Plaintiff's Complaint are asserted against which Defendants. For example, the only claim that is clearly asserted against Defendant Ramesh Pandey is Count One (breach of fiduciary duty). Counts Two (ultra vires act), Eight (unjust enrichment), and Nine (disgorgement) do not specify which Defendant(s) they are asserted against, nor do they contain any particular facts relating to any particular Defendant. Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 678.

---

[3] *See* Compl. ¶ 13.
[4] Generally speaking, since this Court exercises its diversity jurisdiction over this action, the law to be applied is that of the forum state—New Jersey. *See Am. Cyanamid Co. v. Fermenta Animal Health*, 54 F.3d 177, 180 (3d Cir. 1995). Plaintiff does not dispute this.

Thus, Rule 8(a) requires that a complaint put the defendant on notice of the basis of the claims asserted against him. *See Twombly*, 550 U.S. at 555.  Counts Two (ultra vires act), Eight (unjust enrichment), and Nine (disgorgement), as currently drafted, fail to meet this requirement inasmuch as they fail to: (a) specify which defendant(s) they are being asserted against, or (b) contain any facts that would allow the court to draw the reasonable inference that any particular defendant is liable for misconduct alleged.

Next, the Court notes that each count of Plaintiff's Complaint contains the statement "incorporating by reference" all previous allegations.  Although there may be circumstances in which it is appropriate to incorporate certain allegations by reference, there is no question that each count of a properly pled complaint *must* contain: (a) its own cause of action against a clearly identified defendant(s), and (b) those particular factual allegations that would allow the court to draw the reasonable inference that the defendant is liable for that cause of action.  *See Iqbal*, 556 U.S. at 678.  Plaintiff's Complaint, as currently drafted, fails to meet this requirement.  *See, e.g., Anderson v. District Bd. of Trustees of Cent. Florida Cmty. College*, 77 F.3d 364, 366 (11th Cir. 1996) ("Anderson's complaint is a perfect example of 'shotgun' pleading in that it is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief.").  For example, Counts One, Three, Four and Five each allege, in a conclusory fashion, that Defendants Ramesh, Bhuwan, Abhilasha and Renuka respectively "breached [their] fiduciary duty to the Company." (Compl., ¶¶ 57, 62 and 67).  Count One, Three, Four and Five contain no further facts to substantiate the foregoing legal conclusion.  There is no question that "[a] pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not' " suffice. *Iqbal*, 556 U.S. at 678.  Such claims are, therefore, dismissed *without* prejudice.

To the extent Plaintiff intends to re-plead these claims, Plaintiff is hereby advised that he must assert facts showing each defendant's actual personal involvement in each of the alleged wrongs. Stated differently, Plaintiff must present sufficient facts establishing *each* defendant's liability for *each* claim asserted. *See, e.g., See Smart v. Pa. Pub. Util. Comm'n*, No. 96-3586, 1996 WL 442618, at *4 (E.D. Pa. Aug. 2, 1996) (instructing *pro se* plaintiff that a complaint "should clearly identify each defendant, the conduct of each defendant allegedly harming him, and the relief he seeks, setting forth the facts relating to each defendant and to each claim"); *Schiano v. MBNA*, No. 05-1771, 2013 WL 2452681, at *7 (D.N.J. Feb. 11, 2013) (reiterating that Plaintiff must "make clear which claims were being asserted specifically against which defendants, and the specific factual basis for each claim against each defendant, as well as the specific relief being sought and the grounds for that relief"); *see generally Binsack v. Lackawanna Cnt. Prison*, 438 F. App'x 158, 160 (3d Cir. 2011) (holding that the district court did not abuse its discretion in dismissing complaint for failure to "provide a short and plain statement of each claim against each defendant").

**CONCLUSION**

Based on the reasons set forth above, Defendant Ramesh Pandey's motion to dismiss [Docket Entry No. 20] is **granted**. Counts Six (fraud) and Seven (conversion) are dismissed *with* prejudice. Counts One, Two, Three, Four, Five, Eight and Nine are dismissed *without* prejudice. Plaintiff may file an Amended Complaint that cures the pleading deficiencies in Counts One, Two, Three, Four, Five, Eight and Nine on or before **August 2, 2013**.[5] Plaintiff's failure to do so will result in dismissal of the foregoing counts of Plaintiff's Complaint *with* prejudice.

An appropriate Order accompanies this Opinion.

s/ Jose L. Linares
Jose L. Linares
Date: July 1, 2013  United States District Judge

---

[5] Although the Court need not reach this issue, the Court does note that there is some dispute as to whether New Jersey or Delaware law should apply to those claims concerning alleged breaches of Defendants' fiduciary duties. *See* Def. Br. at 12. Generally speaking, since this Court exercises its diversity jurisdiction over this action, the law to be applied is that of the forum state—New Jersey. *See Am. Cyanamid Co. v. Fermenta Animal Health*, 54 F.3d 177, 180 (3d Cir. 1995). If a choice of law dispute arises, a federal court sitting in diversity applies the choice of law principles of the forum state. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941); *Warriner v. Stanton*, 475 F.3d 497, 499-500 (3d Cir. 2007). In *P.V. v. Camp Jaycee,* the New Jersey Supreme Court held that the "most substantial relationship" test enunciated in the Restatement (Second) of Conflict of Laws § 188 applies to choice of law disputes arising under both contract and tort law. 197 N.J. 132, 136 (2008). New Jersey's "most significant relationship" test consists of two prongs. First, a court must examine the substance of the potentially applicable laws in order to determine if an actual conflict exists. *Id.* at 143 (citing *Lebegern v. Forman*, 471 F.3d 424, 430 (3d Cir. 2006)). If there is no actual conflict, the analysis ends and the court applies the law of the forum state. *See In re Ford Motor Co.*, 110 F.3d 954, 965 (3d Cir. 1997); *Rowe v. Hoffman–La Roche, Inc.*, 189 N.J. 615, 621 (2007). However, if a conflict is found, the court must then determine which state has the "most significant relationship" to the claim at issue, as analyzed under the Restatement (Second) of Conflict of Laws. *Camp Jaycee*, 197 N.J. at 136. This test is applied "on an issue-by-issue basis" and "is qualitative, not quantitative." *Id.* at 143. The parties shall be guided accordingly in any future filings with the Court.