## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| ROBERT SWIFT,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>RAMESH PANDEY, et al.,<br><br>　　　　　　Defendants. | Civil Action No. 13-649 (JLL)<br><br><br>**OPINION** |

**LINARES, District Judge.**

This matter comes before the Court by way of a motion to dismiss the Amended Complaint filed by the Pandey Defendants[1] pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure [Docket Entry No. 46]. The Court has considered the submissions made in support of and in opposition to the instant motion. No oral argument was heard. *See* Fed. R. Civ. P. 78. For the reasons that follow, Defendants' motion to dismiss is granted. Counts Six and Eight are deemed withdrawn. Counts Five, Ten and Fourteen are dismissed *with* prejudice. All remaining counts—Counts One, Two, Three, Four, Seven, Nine, Eleven, Twelve, Thirteen, Fifteen, Sixteen, Seventeen, Eighteen[2] and Nineteen—are dismissed *without* prejudice. Plaintiff

---

[1] The Pandey Defendants include Ramesh Pandey, Bhuwan Pandey and Abhulasha Pandey.

[2] As explained more fully below, although Defendant Renuka Misra has not filed a motion to dismiss the Amended Complaint, the claims asserted against her largely mirror the claims asserted against the Pandey Defendants and thus the pleading deficiencies discussed herein apply equally to the claims asserted against her. Because the Court raises these issues *sua sponte* as to Defendant Renuka, the Court dismisses the claims asserted against her *without* prejudice. However, this Court's holding as to the viability of a standalone claim of disgorgement serves as law of the case; thus, Plaintiff may not re-assert the claim of disgorgement (Count Eighteen) against Defendant Renuka in any future iterations of the complaint.

may file a Second Amended Complaint that cures the pleading deficiencies in Counts One, Two, Three, Four, Seven, Nine, Eleven, Twelve, Thirteen, Fifteen, Sixteen, Seventeen and Nineteen **on or before December 13, 2013.**[3]

## BACKGROUND[4]

Plaintiff's Amended Complaint was filed on August 5, 2013. This Court's jurisdiction is premised on 28 U.S.C. § 1332. According to the Amended Complaint, Plaintiff, Robert Swift ("Swift"), at an unspecified time, purchased all right, title and interest in and to any and all assets of Xechem International, Inc. and Xechem, Inc. (collectively "Xechem") at a Chapter 7 auction in Bankruptcy Court. (Am. Compl. ¶ 4).[5] Defendant Ramesh Pandey ("Ramesh") was the Founder, Chief Executive Officer, President, Treasurer, Chairman and Director of Xechem from 1994 until July 2007. (*Id.*, ¶ 15). On May 29, 2007, at a meeting of the Company's Board of Directors, the Board discovered that Ramesh had spent nearly $4.3 million of the $6.3 million convertible bond offering that Plaintiff Swift had helped the company raise in April 2007. (*Id.*, ¶¶ 11, 16). The Board subsequently withdrew Ramesh's authority to sign checks for more than $5,000 without Board approval. (*Id.*, ¶ 17). Despite the Board's directive, Ramesh continued writing checks to friends and family—some of whom are included as co-defendants in this action—totaling $605,639.87. (*Id.*, ¶ 18).

---

[3] Plaintiff may <u>not</u> add any additional causes of action without adhering to Federal Rule of Civil Procedure 15(a).

[4] The Court accepts the following facts asserted in Plaintiff's Amended Complaint as true solely for purposes of this motion.

[5] Defendants do not challenge Plaintiff's standing to bring this action.

Ramesh was subsequently removed as Chief Executive Officer, President and Treasurer of Xechem by the Board of Directors on July 5, 2007. (*Id.*, ¶ 19). On November 10, 2008, Xechem filed for Chapter 11 protection. (*Id.*, ¶ 20).

In light of the foregoing, Plaintiff's Amended Complaint asserts nineteen causes of action that fall into the following seven categories: (1) breach of fiduciary duty as against Ramesh, Bhuwan, Abhilasha, and Renuka, (2) ultra vires as against Ramesh, (3) breach of duty of loyalty as against Ramesh, Bhuwan, Abhilasha, and Renuka, (4) unjust enrichment as against Ramesh, Bhuwan, Abhilasha, and Renuka, (5) disgorgement of unlawful profits as against Ramesh, Bhuwan, Abhilasha, and Renuka, (6) fraudulent concealment as against all Defendants, and (7) civil conspiracy as against all Defendants. Defendants Ramesh Pandey, Bhuwan Pandey and Abhulasha Pandey now move to dismiss all claims asserted in the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

It should be noted that it is not entirely clear to the Court, based on the electronic docket, whether service of process was ever properly effectuated on Defendant Renuka Misra ("Renuka"). Nor is there any indication that Defendant Renuka has filed a responsive pleading as to the original complaint or as to the Amended Complaint. Because the claims asserted against Defendant Renuka in the Amended Complaint largely mirror the claims asserted against the Pandey Defendants, and because the deficiencies discussed below thus apply equally to all claims asserted against Defendant Renuka, in the interest of judicial economy, and based on the Court's inherent authority to manage its docket, the Court dismisses such claims without prejudice for failure meet the Rule 8(a) pleading standard and will allow Plaintiff to re-plead such claims in the context of filing a Second Amended Complaint. Plaintiff will not be prejudiced by this approach inasmuch as the Court's dismissal of claims asserted against Renuka

is *without* prejudice and leave to amend such claims is expressly granted.[6]  In the meantime, Plaintiff is directed to file proof of service as to Defendant Renuka in accordance with Rule 4 of the Federal Rules of Civil Procedure.

## LEGAL STANDARD

For a complaint to survive dismissal, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

In determining the sufficiency of a complaint, the Court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008).  But, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.  Thus, legal conclusions draped in the guise of factual allegations may not benefit from the presumption of truthfulness.  *Id.*

## DISCUSSION

Before turning to Defendants' arguments, the Court notes that Plaintiff has agreed to withdraw Counts Six (fraudulent concealment as against all Defendants), and Eight (breach of

---

[6] Plaintiff may not, however, reassert a claim of disgorgement as against Defendant Renuka inasmuch as the Court concludes, below, that disgorgement is an equitable *remedy,* not a cause of action.  This holding is now law of the case.

duty of loyalty as against Bhuwan Pandey).    Thus, Counts Six and Eight of the Amended Complaint are hereby deemed withdrawn and shall be stricken from the Amended Complaint.

The Court also notes some deficiencies in Plaintiff's opposition brief.  First, the pages in Plaintiff's brief are not numbered, and the brief itself fails to contain a table of contents or a table of authorities, both of which are required by Local Civil Rule 7.2(b).

Second, Plaintiff's opposition brief contains a recitation of the relevant facts with no citations to the Amended Complaint.  In determining the sufficiency of a complaint, the Court must, *inter alia*, accept all well-pleaded factual allegations contained in the complaint as true and then determine whether said allegations contain sufficient factual matter to state a claim to relief that is plausible on its face.  *See Phillips,* 515 F.3d at 234; *Iqbal*, 556 U.S. at 678.  Moreover, a complaint cannot be amended (or supplemented) by way of an opposition brief. *See Pennsylvania ex rel. v. Zimmerman v. Pepsico*, 836 F.2d 173 (3d Cir.1988) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.") (citation omitted).  It appears to the Court that Plaintiff's opposition brief contains facts that are not expressly set forth in the Amended Complaint.  Because the factual background section of Plaintiff's opposition brief contains no citation to the Amended Complaint, the Court has no way of knowing for sure whether each and every factual allegation contained therein is also present in the Amended Complaint, and, if so, where.  In any event, the Court has done its best to assess the instant motion to dismiss based on the facts pled in the Amended Complaint.  Should Plaintiff choose to file a Second Amended Complaint, Plaintiff is hereby directed to include all relevant facts in the complaint itself and, to the extent Plaintiff purports to summarize such facts in any future filings, Plaintiff shall provide citations to the complaint so that the Court can more readily

assess whether said complaint contains a claim to relief that is plausible "on its face." *Iqbal*, 556 U.S. at 678.

Finally, the Court notes that Plaintiff's opposition brief is practically devoid of any citations to legal authority. While the Court is mindful of Plaintiff's *pro se* status, it is not the Court's responsibility to engage in its own legal research in order to find legal authority to support Plaintiff's arguments—nor would it be proper for the Court to do so. Again, the Court has done its best, under the circumstances, to assess Defendants' legal arguments, along with the arguments raised by Plaintiff in opposition, despite Plaintiff's failure to cite to any legal authority in support of same.

Plaintiff shall take note of the foregoing deficiencies in his submission and shall be guided accordingly in any future filings with this Court.

Defendants present a variety of arguments in support of their motion to dismiss. The Court will address each argument, in turn.

1.      **Disgorgement—Counts Five, Ten and Fourteen**

Defendants move to dismiss Plaintiffs' claims of disgorgement on the basis that disgorgement is a remedy, not a cause of action. Plaintiff essentially concedes that disgorgement is not a standalone claim when he argues that Ramesh Pandey knowingly and voluntarily accepted and retained the benefit of $69,665.35, that retention of said money would be unjust and that, as a result, Plaintiff is entitled to the remedy of disgorgement. (Pl. Opp'n Br. at 6-7). The Third Circuit has explained that "disgorgement is an equitable remedy designed to deprive a wrongdoer of his unjust enrichment and to deter others from violating securities laws." *S.E.C. v. Hughes Capital Corp.*, 124 F.3d 449, 455 (3d Cir. 1997) (quoting *S.E.C. v. First City Fin. Corp.*,

890 F.2d 1215, 1230 (D.C. Cir. 1989)); *Commodity Futures Trading Comm'n v. Am. Metals Exch. Corp.,* 991 F.2d 71, 76 (3d Cir. 1993) ("Disgorgement does not penalize, but merely deprives wrongdoers of ill-gotten gains.") (citation omitted). The New Jersey Supreme Court has likewise construed disgorgement as an appropriate remedy in cases involving claims of unjust enrichment. *See Cnty. of Essex v. First Union Nat'l Bank*, 186 N.J. 46, 49 (2006) ("The primary issues in this appeal are whether claims for unjust enrichment/disgorgement survive when there is a valid contract, and if so, when an employee of a commercial bank bribes a public official to obtain underwriting privileges on three bond issues, whether the bank must disgorge that part of the fee paid to innocent third parties. We hold that under the circumstances presented, disgorgement is an appropriate remedy"). Plaintiff cites to no binding legal authority suggesting otherwise.

In light of the foregoing, the Court agrees that Counts 5, 10, and 14 of the Amended Complaint—all of which assert standalone claims for disgorgement—must be dismissed with prejudice inasmuch as disgorgement is an equitable *remedy*—not a cause of action—that is, in any event, subsumed within Plaintiff's claims of unjust enrichment.[7] Defendants' motion to dismiss Plaintiff's claims of disgorgement (Counts 5, 10 and 14) is therefore granted.[8]

---

[7] The Court's dismissal in this regard does not preclude Plaintiff from seeking disgorgement as a form of relief in conjunction with his unjust enrichment claims. *See, e.g.*, *S.E.C. v. Hughes Capital Corp.*, 124 F.3d 449, 455 (3d Cir. 1997) ("Disgorgement is an equitable remedy designed to deprive a wrongdoer of his unjust enrichment and to deter others from violating securities laws.").

[8] Count Eighteen is likewise dismissed without prejudice, *sua sponte,* for the same reasons.

## 2.     Ultra Vires—Count Two

Count Two of Plaintiff's Amended Complaint alleges that: (a) "a transfer of substantial assets of the Company required the approval of the board of directors," (b) "Ramesh transferred $605,539.15 of the Company's assets to friends and family without obtaining Board approval," and, as a result, (c) "the purported transfer of the assets was an ultra vires act and was void and ineffective." (Am. Compl., ¶¶ 41-43).  Defendant Ramesh moves to dismiss this count on several grounds, including, but not limited to, the fact that Plaintiff, as assignee of Xechem's rights, lacks standing to invoke the New Jersey ultra vires statute, N.J.S.A. 14A:3-2.

In opposing dismissal of this count of the Amended Complaint, Plaintiff does not dispute that such count is brought pursuant to N.J.S.A. 14A:3-2 ("Ultra vires transactions").[9]  N.J.S.A. 14A:3-2 provides, in pertinent part:

> No act of a corporation and no conveyance or transfer of real or personal property to or by a corporation shall be invalid by reason of the fact that the corporation was without capacity or power to do such act or to make or receive such conveyance or transfer, but such lack of capacity or power may be asserted:
>
> (a) In a proceeding by a shareholder against the corporation to enjoin the doing of any act or acts or the transfer of real or personal property by or to the corporation. If the unauthorized acts or transfer sought to be enjoined are being, or are to be, performed or made pursuant to any contract to which the corporation is a party, the court may, if all of the parties to the contract are parties to the proceeding and if it deems the same to be equitable, set aside and enjoin the performance of such contract, and in so doing may allow to the corporation or to the other parties to the contract, as the case may be, compensation for the loss or damage sustained by either of them which may result from the action of the court in setting aside and enjoining the performance of such contract, but anticipated profits to be

---

[9] Nor do the parties dispute that New Jersey law governs Plaintiff's claims.  *See Am. Cyanamid Co. v. Fermenta Animal Health*, 54 F.3d 177, 180 (3d Cir. 1995) ("The district court exercised its diversity jurisdiction. This means that the law to be applied is that of the forum state-New Jersey.").

derived from the performance of the contract shall not be awarded by the court as a loss or damage sustained.

(b) In a proceeding by the corporation, whether acting directly or through a receiver, trustee, or other legal representative, or through shareholders in a representative suit, against the incumbent or former officers or directors of the corporation.

(c) In a proceeding by the Attorney General, as provided in this act, to dissolve the corporation, or in a proceeding by the Attorney General to enjoin the corporation from the transaction of unauthorized business.

N.J.S.A. 14A:3-2.

In support of its motion to dismiss, Defendant argues that the Amended Complaint contains no factual allegations suggesting that the payments allegedly made by Ramesh exceeded the powers given to Xechem in its articles of incorporation. In support of this requirement, Defendant cites to 7A William M. Fletcher, Cyclopedia of the Law of Corporations § 3400 for the following proposition: "When properly used, the words 'ultra vires,' as applied to the act of a corporation, mean simply an act that is beyond the powers conferred upon the corporation by its charter, as distinguished from an act that is authorized by its charter." The Appellate Division has confirmed that "[i]f a board exceeds its powers as provided in its governing documents, then the board's action is ultra vires." *Cmty. Access Unlimited v. Rockcliffe*, 2012 WL 1431267, at *3 n. 4 (N.J. Super. App. Div. April 26, 2012) (citing *Verna v. Links at Valleybrook Neighborhood Ass'n,* 371 N.J. Super. 77, 91–92 (App. Div. 2004)). To the extent Plaintiff's claim for ultra vires is premised on the fact that Ramesh, acting on behalf of the Board, exceeded his powers in making the challenged payments to himself and the co-defendants (by failing to obtain prior Board approval), the Court agrees that Plaintiff's Amended Complaint fails to contain any facts

suggesting that the payments allegedly made by Ramesh exceeded the powers given to Xechem in its governing documents.

Next, Defendant argues that Plaintiff lacks standing to invoke this statute inasmuch as he is merely assignee of the rights of Xechem, not its "legal representative" within the meaning of the statute. Plaintiff maintains, however, that by virtue of his purchase of all right, title and interest in the assets of Xechem International, Inc. and Xechem, Inc. at the Chapter 7 auction, he became the "legal representative" for the legal claims of Xechem International, Inc. Thus, he argues that "the Ultra Vires claim is a legal proceeding by Xechem International, Inc. against defendant Ramesh Pandey." (Pl. Opp'n Br. at 6). Having carefully considered the parties' arguments, the Court concludes that because the Amended Complaint does not allege that Plaintiff is a shareholder of Xechem, or that the case is brought by the Attorney General or by Xechem directly, Plaintiff's claim pursuant to N.J.S.A. 14A:3-2 can only proceed if the Amended Complaint contains facts establishing that this case is brought by a receiver, trustee, or other legal representative of Xechem. Although Plaintiff argues, in his opposition brief, that he is Xechem's legal representative, the Amended Complaint does not allege any facts to support this conclusion; rather, the Amended Complaint alleges merely that Plaintiff purchased all of Xechem's assets. Moreover, Plaintiff cites to no binding legal authority in support of the theory that his purchase at the Chapter 7 auction renders him a legal representative of Xechem International, Inc. and/or Xechem, Inc.

In light of the foregoing, Plaintiff has failed to state a claim pursuant to N.J.S.A. 14A:3-2 that is plausible on its face. Defendant Ramesh's motion to dismiss this claim is granted; Count Two of Plaintiff's Amended Complaint is dismissed without prejudice.

### 3.     Unjust Enrichment—Counts Four, Nine, Thirteen

Counts Four, Nine and Thirteen contain claims of unjust enrichment as against Ramesh, Bhuwan and Abhilasha Pandey. Defendants move to dismiss all claims of unjust enrichment on the basis that the Amended Complaint fails to contain any facts plausibly establishing how or why Defendants' retention of the challenged Xechem payments allegedly made to them were unjust. (Def. Br. at 19). In particular, Defendants maintain that "the mere allegation that these payments were not authorized by Xechem's board, or that they violated Xechem's agreement with its bond holders, is not sufficient to establish that the payments did not otherwise satisfy legitimate company debts or that Xechem derived no value from them." (*Id.*).

To state a claim for unjust enrichment under New Jersey law, a Plaintiff must establish that the "defendant received a benefit and that retention of that benefit without payment would be unjust" and that Plaintiff "expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights." *VRG Corp. v. GKN Realty Corp.,* 135 N.J. 539, 554 (1994). Moreover, under New Jersey law, "recovery under unjust enrichment may not be had when a valid, unrescinded contract governs the rights of the parties." *Van Orman v. Am. Ins. Co.,* 680 F.2d 301, 310 (3d Cir. 1982).

Count Four alleges that "Ramesh was unjustly enriched when he received Company funds without approval of the Board of Directors" and that "it would be inequitable for Ramesh to retain the benefit of the Company's money, as that transfer of money was contra to his duties as an officer and director of the Company and therefore it would be morally and ethically wrong for Ramesh to benefit by his illegal acts." (Am. Compl., ¶¶ 50-54). Count Nine alleges that Bhuwan was unjustly enriched when he received $7,752.13 from the Company, and that "it

would be inequitable for Bhuwan to retain the benefit of the Company's money, as that transfer of money was contra to his duties as an officer of the Company and therefore it would be morally and ethically wrong for Bhuwan to benefit by his illegal acts." (Am. Compl., ¶¶ 73-79). Count Thirteen alleges that Defendant Abhilasha was unjustly enriched when she received $14,617 from the Company and that it would be inequitable for Abhilasha to retain the benefit of the Company's money, as that transfer of money was contra to her duties as an officer of the Company and therefore "it would be morally and ethically wrong for Abhilasha to benefit by her illegal acts." (Am. Compl., ¶¶ 95-101). Count Seventeen alleges that Defendant Renuka was unjustly enriched when she received $151,875 from the Company and that it would be inequitable for Renuka to retain such money because the underlying transfer was contra to her duties as an officer of the Company and therefore it would be morally and ethically wrong for Renuka to benefit by her illegal acts. (Am. Compl., ¶¶ 116-122).

The Court finds that Plaintiff has failed to state a facially plausible claim of unjust enrichment as against any of the Defendants for two reasons. First, the Court finds that the conduct underlying Plaintiff's unjust enrichment claims sounds in tort.[10] New Jersey does not recognize unjust enrichment as an independent tort cause of action. *See Castro v. NYT Television,* 370 N.J. Super. 282, 299 (App. Div. 2004) (explaining that "the role of unjust enrichment in the law of torts is limited for the most part to its use as a justification for other torts such as fraud or conversion."); *Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc.,* 171 F.3d 912, 936 (3d Cir. 1999) ("In the tort setting, an unjust enrichment claim is essentially another way of stating a traditional tort claim (i.e., if defendant is permitted to keep

---

[10] The Court previously dismissed Plaintiff's tort claims, with prejudice, on the basis that pre-judgment tort claims cannot be assigned under New Jersey law. *See Integrated Solutions, Inc. v. Serv. Support Specialties, Inc.*, 124 F.3d 487, 490 (3d Cir. 1997).

the benefit of his tortious conduct, he will be unjustly enriched).”). Plaintiff has not alleged that he—or Xechem—performed or otherwise conferred a benefit on any of the Pandey Defendants under a quasi-contractual relationship with the expectation of remuneration. Rather, Plaintiff asserts that each of the Defendants misappropriated the Company's assets, for which the Company clearly did not anticipate or expect remuneration. *See, e.g.,* Am. Compl., ¶ 47 (“Ramesh breached his [duty of] loyalty to the Company when he misappropriated $69,655.07 of the Company's money for his benefit.”); ¶ 70 (“Bhuwan breached his duty of loyalty to the Company when he aided and abetted Ramesh in the misappropriation [of] Company assets to give his friends and family.”); ¶ 92 (“Abhilasha breached her [duty of] loyalty to the Company when she aided and abetted Ramesh in the misappropriation [of] Company assets to give to his friends and family.”).

Second, even assuming that the conduct underlying Plaintiff's unjust enrichment claim does not actually sound in tort, Plaintiff fails to allege that he—or even Xechem—expected remuneration from any of the Defendants at the time that the challenged payments were made to them by Ramesh, *or* that any of the Defendants failed to provide such remuneration in exchange. *See VRG Corp.*, 135 N.J. at 554 (explaining that the “unjust enrichment doctrine requires that plaintiff show that it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant”). Whether it would be “morally” or “ethically” wrong for the Defendants to have benefited from the challenged payments is irrelevant to the issue of whether any of the Defendants were actually enriched beyond their contractual rights.

Defendants's motion to dismiss this claim is granted. *See, e.g., Nelson v. Xacta 3000 Inc.,* No. 08–5426, 2009 WL 4119176, at *7 (D.N.J. Nov. 24, 2009) (dismissing unjust enrichment claim after finding that “New Jersey law does not recognize unjust enrichment as an independent

tort cause of action"); *Warma Witter Kreisler, Inc. v. Samsung Elecs., Am., Inc.,* No. 08–5380, 2009 WL 4730187, at *7 (D.N.J. Dec. 3, 2009) (dismissing unjust enrichment claim and noting that "Plaintiff does not claim that it failed to receive the printer for which it conferred a benefit on the Defendant; rather, Plaintiff's theory of recovery is based on the assertion that it was misled by Samsung as to the fitness of the printer and that as a result of Samsung's tortious conduct, Plaintiff is allowed to recover damages. Such allegations sound in tort."). To the extent the pleading deficiencies in Plaintiff's unjust enrichment claims can be cured by way of amendment, such claims are dismissed without prejudice.[11]

**4. Breach of Fiduciary Duty—Counts One, Seven and Eleven**

Counts One, Seven and Eleven allege breach of fiduciary duty claims as against Defendants Ramesh, Bhuwan and Abhilasha. In particular, Count One alleges that, as an employee of the Company, Ramesh breached his duty of loyalty to the Company when he misappropriated $609,539.15 of Company money to give to his friends and family. (Am. Compl., ¶ 46). Count Seven alleges that, as an Officer of the Company, Bhuwan owed a fiduciary duty to the Company and that he breached said duty by not disclosing to the Board of Directors that he received corporate assets, and by not disclosing that Ramesh transferred Company assets to friends and family. (*Id.*, ¶ 66). Count Eleven alleges that, as an Officer of the Company, Abhilasha breached her fiduciary duty by: not disclosing to the Board that she received a check for $14,617; by not disclosing that Ramesh wrote $605,539.15 in checks to friends and family; and by aiding and abetting Ramesh by giving him substantial assistance in transferring $605,539.15 in checks to friends and family. (*Id.*, ¶ 87). Similarly, Count Fifteen

---

[11] Count Seventeen is *sua sponte* dismissed without prejudice for the same reasons.

alleges that, as an officer of the Company, Renuka breached her fiduciary duty to the Company by not disclosing to the Board that she received a check for $151,875, and by not disclosing that Ramesh wrote $605,539.15 in checks to friends and family. (*Id.*, ¶ 109).

The Pandey Defendants move to dismiss all fiduciary duty claims on several grounds. In opposition to Defendants arguments, Plaintiff argues that the checks signed by Ramesh were not for "normal payroll, rent or other recurring items;" rather, "the checks were to pay what are characterized as loans that friends and family members of Ramesh Pandey had made to the Xechem International, Inc., and characterized in SEC filings as Related Parties Transactions, and the payment of loans with the Convertible Debt money was contra to the Use of Proceeds for the Convertible Debt money raised in April 2007, and therefore a breach of his fiduciary duty." (Pl. Opp'n Br. at 5). Similarly, Plaintiff goes on to argue that Defendants Bhuwan, Abhilasha and Renuka received payment for alleged loans they had previously made, respectively, to Xechem International, Inc., and were aware that such payments came from the Convertible Debt Offering in April 2007, which expressly prohibited the use of said funds to pay off past debts. (Pl. Opp'n Br. at 7-8).

In order to state a claim for breach of fiduciary duty under New Jersey law, Plaintiffs must allege: (1) a fiduciary relationship comprised of "two persons when one person is under a duty to act for or give advice for the benefit of another on matters within the scope of their relationship," and (2) a "violation of that trust." *F.G. v. MacDonell,* 150 N.J. 550, 563–65 (1997). Defendants do not dispute that, as a general matter, "officers are fiduciaries of the corporations they serve." *See In re United Artists Theatre Co.*, 315 F.3d 217, 230 n. 14 (3d Cir. 2003); *Riddle v. Mary A. Riddle Co.,* 140 N.J. Eq. 315, 318 (Ch. Div. 1947). Nor can it be

reasonably disputed that "directors of the corporation . . . are bound to act for its best interests." *Riddle*, 140 N.J. Eq. at 318.

As to the first prong, to the extent Defendants raise factual issues concerning the timing of Defendants' employment with Xechem, and whether any alleged fiduciary duties were actually in effect at the time the challenged payments were made, such issues go to the merits of Plaintiff's claims and are not properly addressed on a motion to dismiss.[12]

As to the second prong, however, the Court notes that Plaintiff has attempted—by way of his opposition brief—to supplement his fiduciary duty claims with facts that are not set forth in the Amended Complaint. For instance, Plaintiff's statement that the challenged payments/checks signed by Ramesh were not for "normal payroll, rent or other recurring items," but rather were used to pay off alleged "loans" that co-defendants had previously made to the Xechem, is not set forth in the Amended Complaint. (Pl. Opp'n Br. at 5). As previously stated, a complaint cannot be amended (or supplemented) by way of an opposition brief.[13] Such factual allegations concerning the nature of the challenged payments made by Ramesh to himself and co-defendants are not properly before this Court and cannot be considered in assessing whether Plaintiff has succeeded in stating a breach of fiduciary duty claim that is plausible *on its face*.

At *most*, the Amended Complaint alleges that Defendant Ramesh made payments to co-defendants that he had no authority to make.[14] Even assuming the existence of a fiduciary

---

[12] The standard on a motion to dismiss is not whether Plaintiff's claim(s) will ultimately succeed or even the probability of their success; rather, in order to state a claim for purposes of Rule 12(b)(6), Plaintiff must simply allege "enough fact to raise a reasonable expectation that discovery will reveal evidence" in support of such claim(s). *Twombly*, 550 U.S. at 556.

[13] *See Zimmerman*, 836 F.2d at 181 ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.") (citation omitted).

[14] It should be noted, however, that the parties dispute whether the prohibition on Ramesh's spending was actually in effect at the time the challenged payments were made. In particular,

relationship between Xechem and each of the Defendants, absent factual content concerning the circumstances surrounding the challenged payments—including but not limited to the alleged loans made by Ramesh's co-defendants to Xechem—the Court cannot draw the reasonable inference that such payments were not legitimate business expenditures. In fact, Plaintiff's opposition brief concedes that it is "unclear if the debts that were paid by Ramesh Pandey to his friends, family and himself were in fact legitimate debts of Xechem International, Inc." (Pl. Opp'n Br. at 6). Certainly, absent any facts establishing that the challenged payments were for non-legitimate business purposes, the Court cannot reasonably infer that a violation of trust occurred for purposes of stating a breach of fiduciary duty claim under New Jersey law. *See MacDonell,* 150 N.J. at 565 ("Establishing a fiduciary duty essentially requires proof that a parishioner trusted and sought counseling from the pastor. A violation of that trust constitutes a breach of the duty."). Defendants' motion to dismiss the breach of fiduciary claims is granted; such claims are dismissed without prejudice.[15]

---

Defendants maintain that pursuant to the Board's resolution, such prohibition on Ramesh's spending contained the following caveat: "to be implemented as soon as proper signature cards can be generated." (Def. Br. at 6). Although Plaintiff's Amended Complaints makes no clear reference to the "to be implemented" provision, Plaintiff's opposition brief concedes the existence of this condition on the Board's prohibition. (Pl. Opp'n Br. at 3). Although the Court cannot rule on issues of fact on a motion to dismiss, given Plaintiff's concession that the Board's prohibition contained a condition precedent, to the extent Plaintiff chooses to amend his claims, he **shall** include facts to provide proper context for the Board's prohibition on Ramesh's spending, including but not limited to facts concerning any condition precedent to such prohibition, and facts indicating whether any such conditions were or were not met at the time the challenged payments were made. Absent such factual content, the Court cannot draw the reasonable inference that Ramesh had no authority to make the challenged payments.

[15] Count Fifteen is *sua sponte* dismissed without prejudice for the same reasons.

**5.**      **Breach of Duty of Loyalty—Counts Three and Twelve**

Counts 3 and 12 allege claims of breach of the duty of loyalty as against Defendants Ramesh and Abhilasha. Plaintiff's breach of the duty of loyalty claims are premised on the same theory underlying his breach of fiduciary duty claims—namely, that Defendants each breached their respective duties of loyalty to the Company by misappropriating Company funds (or aiding and abetting in said misappropriation). *See* Am. Compl., ¶¶ 46-47, 91-92 113-114.

"Common law . . . imposes on a director a duty of loyalty to the corporation served." *Matter of Seidman*, 37 F.3d 911, 933 (3d Cir. 1994). "The duty of loyalty includes a duty to avoid conflicts of interest." *Id.* (citing *Pepper v. Litton*, 308 U.S. 295, 306, 310–11 (1939)). New Jersey law, in particular, requires that "the conduct of the business of the corporation must be exercised by the directors honestly and in good faith, for what the directors, in their best judgment, deem to be for the best interest of the corporation." *Riddle*, 140 N.J. Eq. at 318.

Even assuming the existence of a fiduciary relationship between Xechem and Defendants, Plaintiff's conclusory allegations of misappropriation of Company funds—without any facts to provide proper context—fail to nudge Plaintiff's claims of breach of duty of loyalty across the line from conceivable to plausible. In particular, the Court reiterates that Plaintiff's allegations that the checks signed by Ramesh and paid to the various defendants were *not* for "normal payroll, rent or other recurring items" are not set forth in the Amended Complaint. *See* Pl. Opp'n Br. at 5. Nor is the factual allegation that "the checks were to pay what are characterized as loans that friends and family members of Ramesh Pandey had made to the Xechem International, Inc." contained in the operative complaint. *See id.* Absent this type of factual content to substantiate conclusory allegations of self-dealing, Plaintiff has failed to state a

claim for breach of duty of loyalty that is plausible on its face. Defendants' motion to dismiss Counts Three and Twelve is granted; such claims are dismissed without prejudice.[16]

### 6. Civil Conspiracy—Count Nineteen

Count Nineteen alleges that "in committing the acts of wrongdoing alleged herein, all defendants acted pursuant to a common scheme to conceal and misappropriate assets from the Company," and that "all defendants were aware of the common scheme and took steps in furtherance of such scheme." (Am. Compl., ¶¶ 127-130).

Under New Jersey law, civil conspiracy is "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damage." *Morgan v. Union Cnty. Bd. of Chosen Freeholders,* 268 N.J. Super. 337, 364 (App. Div. 1993) (citations and quotations omitted); *see also Banco Popular N.A. v. Gandi,* 184 N.J. 161, 177 (2005). The "gist of the claim is not the unlawful agreement, 'but the underlying wrong which, absent the conspiracy, would give a right of action.' " *Morgan*, 268 N.J. Super. at 364 (citations omitted). Thus, civil conspiracy is a dependent claim which must be alleged alongside a substantive claim. *See, e.g., Eli Lilly and Co. v. Roussel Corp.*, 23 F. Supp. 2d 460, 497 (D.N.J. 1998). Moreover, a plaintiff cannot state a claim for civil conspiracy by making "conclusory allegations of concerted action," without including allegations of fact regarding defendants' joint action. *Abbot v. Latshaw*, 164 F.3d 141, 148 (3d Cir. 1998). Thus, in order to survive a Rule 12(b)(6) motion to dismiss, a civil conspiracy claim must allege "at least some facts which could, if proven, permit a reasonable

---

[16] Count Sixteen is *sua sponte* dismissed without prejudice for the same reasons.

inference of a conspiracy to be drawn." *Durham v. City and Cnty. of Erie*, 171 Fed. Appx. 412, 415 (3d Cir. 2006). A plaintiff can meet this requirement when their complaint "sets forth a valid legal theory and it adequately states the conduct, time, place, and persons responsible." *Lynn v. Christner*, 184 Fed. Appx. 180, 185 (3d Cir. 2006).

Plaintiff's Amended Complaint contains only a recitation of the elements of a conspiracy-related claim without reference to any supporting facts which would allow the Court to draw the reasonable inference that each of the Defendants in this action specifically engaged in the underlying unlawful acts by virtue of *an agreement*.   To be clear, putting aside the deficiencies in substantive claims asserted against each of the Defendants, individually, Plaintiff has failed to state a facially plausible claim of civil conspiracy because the Amended Complaint fails to contain, *inter alia*, facts establishing the existence of any type of agreement between the Defendants to inflict an injury on the Plaintiff.   *See, e.g., Morgan,* 268 N.J. Super. at 364. Defendants' motion to dismiss Count Nineteen is granted; Count Nineteen of the Amended Complaint is dismissed without prejudice.

## **CONCLUSION**

Based on the reasons set forth above, Defendants' motion to dismiss [Docket Entry No. 46] is **granted**.   Counts Six and Eight are deemed withdrawn.  Counts Five, Ten and Fourteen are dismissed *with* prejudice.  All remaining counts—Counts One, Two, Three, Four, Seven, Nine, Eleven, Twelve, Thirteen, Fifteen, Sixteen, Seventeen, Eighteen[17] and Nineteen—are dismissed *without* prejudice.   Plaintiff may file a Second Amended Complaint that cures the pleading deficiencies in Counts One, Two, Three, Four, Seven, Nine, Eleven, Twelve, Thirteen,

---

[17] *See supra* note 2.

Fifteen, Sixteen, Seventeen and Nineteen **on or before December 13, 2013.**[18]  Plaintiff's failure

to do so will result in dismissal of such claims *with* prejudice.

An appropriate Order accompanies this Opinion.


s/ Jose L. Linares
Jose L. Linares
Date:  November 13, 2013        United States District Judge

---

[18] Plaintiff may <u>not</u> add any additional causes of action without adhering to Federal Rule of Civil Procedure 15(a).