<u>NOT FOR PUBLICATION</u>                                                    **CLOSED**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ROBERT SWIFT,<br><br>            Plaintiff,<br><br>v.<br><br>RAMESH PANDEY, et al.,<br><br>            Defendants. | Civil Action No. 13-649 (JLL)<br><br><br>**OPINION** |

**LINARES, District Judge.**

      This matter comes before the Court by way of a motion to dismiss the Second Amended Complaint filed by the Pandey Defendants[1] pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure [Docket Entry No. 58]. The Court has considered the submissions made in support of and in opposition to the instant motion.[2] No oral argument was heard. *See* Fed. R. Civ. P. 78. For the reasons that follow, Defendants' motion is **granted**. Plaintiff's Second Amended Complaint is hereby dismissed, in its entirety, *with* prejudice.

---

[1] The Pandey Defendants include Ramesh Pandey, Bhuwan Pandey and Abhulasha Pandey.

[2] After granting Plaintiff with an extension of time in which to oppose Defendants' motion, this Court entered an Order on February 19, 2014 Order stating in *no uncertain terms* that Plaintiff's opposition brief was due—at the latest—by March 3, 2014. The Court received Plaintiff's opposition brief on March 12, 2014. As such, Defendants' motion could be construed as unopposed. In the interest of fairness, however, and in light of Plaintiff's *pro se* status, the Court has considered Plaintiff's untimely opposition brief in rendering its decision.

## BACKGROUND[3]

Plaintiff's Second Amended Complaint was filed on December 13, 2013.  This Court's jurisdiction is premised on 28 U.S.C. § 1332.  According to the Second Amended Complaint, Plaintiff, Robert Swift ("Swift")—a Colorado resident—purchased all right, title and interest in and to any and all assets of Xechem International, Inc. and Xechem, Inc. (collectively "Xechem") at a Chapter 7 auction in Bankruptcy Court on August 24, 2011.  (Sec. Am. Compl. ¶ 5).  Plaintiff is also a former member of Xechem's board of directors and a substantial investor in Xechem.  (*Id.*, ¶¶ 5, 11).  Among those assets of Xechem allegedly purchased by Plaintiff were "any causes of action against Ramesh Pandey and members of his family, if any" and "any causes of action related to the actions or failure to act by the directors and officers of [Xechem] . . . and any related insurance claims." (*Id.*, ¶ 5).

Defendant Ramesh Pandey ("Ramesh")—a New Jersey resident—was the Founder, Chief Executive Officer, President, Treasurer, Chairman and Director of Xechem from 1994 until July 2007.  (*Id.*, ¶ 13).  Defendant Bhuwan Pandey ("Bhuwan")—a New Jersey resident—was Vice President of International Operations for Xechem from 2002 until May 2007. (*Id.*, ¶ 14).  Defendant Abhilasha Pandey ("Abhilasha")—also a New Jersey resident—was the Sarbanes-Oxley Compliance Manager for Xechem from June 2006 through July 2007. (*Id.*, ¶ 15).

On May 29, 2007, at a meeting of the company's Board of Directors, the Board discovered that Ramesh had spent nearly $4.3 million of the $7.1 million convertible bond offering that Plaintiff Swift had helped the company raise in April 2007. (*Id.*, ¶¶ 11, 19).  Pursuant to the convertible bond offering agreement, the $7.1 million could not be used to pay past debts; the Second Amended Complaint alleges that Ramesh knew this.  (*Id.*, ¶ 12).  It is

---

[3] The Court accepts the following facts asserted in Plaintiff's Second Amended Complaint as true solely for purposes of this motion.

further alleged that Ramesh used part of the $4.3 million to build himself a new office.  (*Id.*, ¶¶ 18, 19).  Upon discovery of same, the Board withdrew Ramesh's authority to sign checks for more than $5,000 without prior Board approval. (*Id.*, ¶ 20).  At the May 29, 2007 board meeting, Ramesh was expressly advised that he could not write any check for more than $5,000 without a Board member's approval, that he was to obtain new signature cards, and that until the new signature cards were filed, he could write checks only for normal payroll, rent and other recurring expenses.  (*Id.*, ¶ 21).  Despite the Board's directive, Ramesh continued writing checks—for more than $5,000, and without a Board member's approval—to friends and family, some of whom are included as co-defendants in this action, totaling $605,639.87. (*Id.*, ¶¶ 18, 27-40).  The majority of these checks (totaling approximately $405,602.16) were written within one-to-two days of the May 29th meeting.  (*Id.*, ¶ 23).  Not all of these checks were in payment of legitimate Xechem business expenses. (*Id.*, ¶ 41).

Ramesh was subsequently removed as Chief Executive Officer, President and Treasurer of Xechem by the Board of Directors on July 5, 2007.  (*Id.*, ¶ 24).  On November 10, 2008, Xechem filed for Chapter 11 protection. (*Id.*, ¶ 25).

In light of the foregoing, Plaintiff's Second Amended Complaint asserts ten (10) causes of action that fall into the following four categories: (1) breach of fiduciary duty as against Ramesh, Bhuwan and Abhilasha, (2) ultra vires as against Ramesh, (3) breach of duty of loyalty as against Ramesh, Bhuwan and Abhilasha, and (4) unjust enrichment as against Ramesh, Bhuwan and Abhilasha.[4] The Pandey Defendants now move to dismiss all claims asserted in the Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

---

[4] Although Plaintiff's opposition brief makes reference to a claim of civil conspiracy, no such claim appears in the Second Amended Complaint.  This Court previously dismissed, *without* prejudice, the civil conspiracy claim asserted as Count Nineteen in Plaintiff's Amended

## LEGAL STANDARD

For a complaint to survive dismissal, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

In determining the sufficiency of a complaint, the Court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). But, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. Thus, legal conclusions draped in the guise of factual allegations may not benefit from the presumption of truthfulness. *Id.*

## DISCUSSION

Defendants present a variety of arguments in support of their motion to dismiss. The Court will address each argument, in turn.

### 1.    Subject Matter Jurisdiction Over Bhuwan and Abhilasha

First, Defendants argue that the Court lacks subject matter jurisdiction over Defendants Bhuwan and Abhilasha inasmuch as: (1) this Court's subject matter jurisdiction is premised on

---

Complaint. *See* November 13, 2013 Opinion and Order. This Court's November 13, 2013 Opinion and Order made clear that "Plaintiff may file a Second Amended Complaint that cures the pleading deficiencies in . . . . [Count] Nineteen on or before December 13, 2013. Plaintiff's failure to do so will result in dismissal of such claims with prejudice." *See id.* Having failed to file an amended civil conspiracy claim on or before December 13, 2013, the civil conspiracy claim asserted in Plaintiff's Amended Complaint is now dismissed *with* prejudice.

4

28 U.S.C. § 1332—diversity of citizenship, (2) diversity jurisdiction requires an amount in controversy in excess of $75,000, exclusive of interest and costs, 28 U.S.C. § 1332(a), and (3) Plaintiff does not seek damages in excess of $75,000 as against either Defendant Bhuwan or Abhilasha. In particular, Defendants argue that because Plaintiff seeks to hold Bhuwan liable for compensatory damages in the amount of $7,752.13 and Abhilasha liable for compensatory damages in the amount of $14,617, then the Court lacks subject matter jurisdiction over those claims asserted by Plaintiff against Bhuwan and Abhilasha. In support of their position, the Pandey Defendants maintain that: (1) although Plaintiff seeks to recover interest on the compensatory damages claims, interest does not count towards the amount-in-controversy threshold, (2) Plaintiff does not seek to hold Bhuwan and/or Abhilasha jointly and severally liable for damages incurred as a result of Ramesh's alleged actions; and (3) although Plaintiff seeks, in addition to compensatory damages, certain punitive damages as against Bhuwan and Abhilasha, such claims should not be aggregated with his claim for compensatory damages because they are "patently frivolous and without foundation." (Def. Br. at 8-9). In addition, Defendants maintain that even if the Court were inclined to exercise supplemental jurisdiction over claims asserted against Bhuwan and/or Abhilasha—pursuant to Federal Rule of Civil Procedure 20 or otherwise—the Court lacks supplemental jurisdiction over such claims because "exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332." *See* 28 U.S.C. § 1367(b).

Defendants' argument in this regard is premised entirely on the notion that Plaintiff's claim for punitive damages as against Bhuwan and/or Abhilasha is patently frivolous and without foundation. In other words, Defendants' argument—claiming that Plaintiff has failed to

meet the amount-in-controversy requirement as to said Defendants—presupposes the exclusion of Plaintiff's claim for punitive damages vis-à-vis said Defendants.

"Claims for punitive damages may be aggregated with claims for compensatory damages unless the former are 'patently frivolous and without foundation.' Punitive damage claims are per se 'patently frivolous and without foundation' if they are unavailable as a matter of state substantive law." *Golden ex rel. Golden v. Golden,* 382 F.3d 348, 355 (3d Cir. 2004), *abrogated on other grounds by Marshall v. Marshall*, 547 U.S. 293, 311–12 (2006). Although Defendants' argument is well taken, Defendants do not address the circumstances under which punitive damages may be recovered under the substantive law of New Jersey or Delaware. *See, e.g., Packard*, 994 F.2d at 1046 ("We turn then to the question of whether punitive damages may be recovered in Pennsylvania against a trustee. If they cannot, then this case must be dismissed for want of jurisdiction."). For example, although Defendants argue generally that "Swift's pleading contains no allegations establishing the requisite aggravated intent necessary to sustain a claim for punitive damages," Defendants cite to no binding legal authority in support of this position. Certainly, Defendants cite to no binding legal authority addressing what is required in order to recover punitive damages under New Jersey or Delaware law in the breach of fiduciary duty context. *See, e.g., Berrol ex rel. Estate of Berrol v. AIG,* No. 07-1565, 2007 WL 3349763, at *4 (D.N.J. Nov. 7, 2007) ("Under New Jersey law, the recovery of punitive damages [in the insurance context] requires more than bad faith refusal to pay."). The Court is thus not in a position to determine whether Plaintiff's claim for punitive damages vis-à-vis Bhuwan and/or Abhilasha is patently frivolous and/or without foundation.[5] *See Golden,* 382 F.3d at 355

---

[5] It is not the Court's role to fill in the gaps in the parties' arguments.

("Punitive damage claims are *per se* 'patently frivolous and without foundation' if they are unavailable as a matter of state substantive law."). Defendants' argument is therefore rejected.

Absent the exclusion of Plaintiff's claim for punitive damages, Plaintiff has satisfied the amount-in-controversy requirement vis-à-vis Defendants Bhuwan and Abhilasha. *See generally id.* ("If appropriately made, therefore, a request for punitive damages will generally satisfy the amount in controversy requirement because it cannot be stated to a legal certainty that the value of the plaintiff's claim is below the statutory minimum."). Defendants' motion to dismiss claims asserted against Bhuwan and Abhilasha for lack of subject matter jurisdiction is therefore denied.

## 2. Ultra Vires—Count Two

Count Two of Plaintiff's Second Amended Complaint alleges that: (a) "Xechem does not have the power or capacity to transfer substantial assets without Board of Director approval," (b) "Ramesh transferred 28% of Xechem's cash or $605,639 to friends and family without obtaining Board approval," (c) "Ramesh repaid some past debts with money from the convertible bond offering," and (d) that Ramesh's transfer of assets without Board approval and payment of past debts with money from the convertible bond offering constitute ultra vires acts. (Sec. Am. Compl., ¶¶ 54-57). Defendants move to dismiss this count on two grounds: (1) Plaintiff has failed to allege facts establishing that the alleged transfer of funds exceeded Xechem's powers under its articles of incorporation, and (2) Plaintiff has failed to allege facts establishing that he has standing to bring an ultra vires claim—i.e., he has failed to allege sufficient facts establishing that he is Xechem's legal representative—as opposed to merely an assignee of certain of its rights.

7

Even assuming, *arguendo*, that Plaintiff has standing to pursue an ultra vires claim on behalf of Xechem,[6] the Court finds that dismissal of this claim is proper given that Plaintiff has once again failed to allege any facts which would allow the Court to draw the reasonable inference that Ramesh's alleged payment of checks totaling $605,639.87 to various individuals—the majority of whom appear to be employees of Xechem—exceeded Xechem's powers—or the powers conferred on the Board—as provided in Xechem's governing documents.

As stated in the Court's prior Opinion, the Appellate Division has held that "[i]f a board exceeds its powers as provided in its governing documents, then the board's action is ultra vires." *Cmty. Access Unlimited v. Rockcliffe*, No. L-3487-07, 2012 WL 1431267, at *3 n. 4 (N.J. Super. App. Div. April 26, 2012) (citing *Verna v. Links at Valleybrook Neighborhood Ass'n*, 371 N.J. Super. 77, 91–92 (App. Div. 2004)).   Black's Law Dictionary defines "governing document" as "[a] document that defines or organizes an organization, or grants or establishes its authority and governance.   An organization's governing documents may include a charter, articles of incorporation or association, a constitution, bylaws and rules." Black's Law Dictionary 555 (9th ed. 2009).   The Second Amended Complaint makes no reference to Xechem's governing document(s).   Nor does the Second Amended Complaint allege that Xechem, or its Board of Directors, lacked authority to write checks for over $5,000 without prior approval pursuant to, *inter alia*, Xechem's articles of incorporation.  To the contrary, Plaintiff's Second Amended Complaint concedes that prior to the May 29, 2007 meeting, Ramesh, in fact, had the authority to write checks for over $5,000 without prior Board approval.  *See* Sec. Am. Compl., ¶ 20 ("The Board withdrew Ramesh's authority to sign checks for more than $5,000 without Board approval.").  Plaintiff's Second Amended Complaint also concedes that some—if

---

[6] *See* N.J.S.A. 14A:3-2.  The parties do not dispute that New Jersey law applies to this claim. *See generally Am. Cyanamid Co. v. Fermenta Animal Health*, 54 F.3d 177, 180 (3d Cir.1995).

8

not all—of the payments at issue made by Ramesh after the May 29, 2007 meeting may have been "legitimate Xechem business expenses." (Sec. Am. Compl., ¶¶ 41, 42).

"In its true sense the phrase ultra vires describes action which is beyond the purpose or power of the corporation." *McDermott v. Bear Film Co.*, 219 Cal. App. 2d 607, 610, 33 Cal. Rptr. 486, 489 (Cal. App. 1963). Based on the facts pled, the Court cannot draw the reasonable inference that Ramesh's actions—in writing checks for over $5,000 without Board approval— were beyond Xechem's powers, as enumerated in its articles in incorporation,[7] given Plaintiff's concession that Ramesh previously had such authority. At most, Plaintiff alleges that the Board of Directors passed a resolution at the May 29, 2007 meeting which withdrew Ramesh's authority to write checks for over $5,000 and that Ramesh continued to do so. That Ramesh may have performed his duties as Founder, Chief Executive Officer, President, Treasurer, Chairman and/or Director of Xechem in an unauthorized manner does not—*without more*—render his actions, or the related transactions, as outside the object for which Xechem was created.[8]  This is

---

[7] *See, e.g., Seabrook Island Property Owners Ass'n v. Pelzer,* 356 S.E.2d 411, 414 (S.C. App. 1987) ("A corporation may exercise only those powers which are granted to it by law, by its charter or articles of incorporation, and by any bylaws made pursuant thereto; acts beyond the scope of the powers so granted are ultra vires."); *Twisp Min. & Smelting Co. v. Chelan Min. Co.,* 133 P.2d 300, 312 (Wash. 1943) ("The term 'ultra vires', in so far as it applies to corporate transactions, is used to describe corporate transactions which are outside the objects for which the corporation was created, as defined in the law of its organization, and therefore beyond the power conferred on the corporation by the legislature."); *Savannah Ice Co. v. Canal-Louisiana Bank & Trust Co.,* 79 S.E. 45, 46 (Ga. Ct. App. 1913) ("An ultra vires act of a corporation is one in excess of charter power.").

[8] *See, e.g., Nat'l Lock Co. v. Hogland,* 101 F.2d 576, 581 (7th Cir. 1938) ("A Board of Directors cannot increase or decrease corporate powers; and no action of a Board of Directors which the corporation has the power to perform through its directors can be ultra vires of the corporation merely because the board previously has declared by resolution that such action will not be taken.").

particularly so given the absence of any facts suggesting that any of the payments at issue were not for legitimate Xechem business expenses. (Sec. Am. Compl., ¶ 41).

In light of the foregoing, Plaintiff has failed to plead a facially plausible claim of ultra vires under New Jersey law. *See Rockcliffe*, 2012 WL 1431267, at *3 n. 4. Because the Court has already given Plaintiff an opportunity to cure the pleading deficiencies in this claim, Count Two of Plaintiff's Second Amended Complaint is hereby dismissed with prejudice.


**3.     Unjust Enrichment—Counts Four, Seven and Ten**

Counts Four, Seven and Ten contain claims of unjust enrichment as against Ramesh, Bhuwan and Abhilasha Pandey. Defendants move to dismiss all claims of unjust enrichment on the basis that such claims suffer from the same defect identified by the Court in its prior Opinion—namely, such claims are in substance tort claims and New Jersey does not recognize unjust enrichment as an independent tort cause of action.

To state a claim for unjust enrichment under New Jersey law,[9] a Plaintiff must establish that the "defendant received a benefit and that retention of that benefit without payment would be unjust" and that Plaintiff "expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights." *VRG Corp. v. GKN Realty Corp.*, 135 N.J. 539, 554 (1994). Moreover, under New Jersey law, "recovery under unjust enrichment may not be had when a valid, unrescinded contract governs the rights of the parties." *Van Orman v. Am. Ins. Co.*, 680 F.2d 301, 310 (3d Cir. 1982).

---

[9] The parties do not dispute that New Jersey law applies to Plaintiff's claims of unjust enrichment. *See generally Am. Cyanamid Co. v. Fermenta Animal Health*, 54 F.3d 177, 180 (3d Cir. 1995).

The Court has carefully reviewed Counts Four, Seven and Ten of the Second Amended Complaint. The crux of each of the foregoing counts is that Ramesh misappropriated Xechem's funds by writing unauthorized checks and that it would be inequitable to allow Ramesh, Bhuwan and/or Abhilasha to retain such funds. The Court finds that Plaintiff has once again failed to state a facially plausible claim of unjust enrichment as against any of the Defendants for the two reasons already discussed in the Court's prior Opinion. First, the Court finds that the conduct underlying Plaintiff's unjust enrichment claims sounds in tort.[10]   New Jersey does not recognize unjust enrichment as an independent tort cause of action. *See Castro v. NYT Television,* 370 N.J. Super. 282, 299 (App. Div. 2004) (explaining that "the role of unjust enrichment in the law of torts is limited for the most part to its use as a justification for other torts such as fraud or conversion."); *Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc.,* 171 F.3d 912, 936 (3d Cir. 1999) ("In the tort setting, an unjust enrichment claim is essentially another way of stating a traditional tort claim (i.e., if defendant is permitted to keep the benefit of his tortious conduct, he will be unjustly enriched)."). Plaintiff has not alleged that he—or Xechem— performed or otherwise conferred a benefit on any of the Defendants under a quasi-contractual relationship with the expectation of remuneration. Rather, he asserts that each of the Defendants misappropriated Xechem's assets, for which Xechem clearly did not anticipate or expect remuneration. *See, e.g.,* Sec. Am. Compl., ¶ 64 ("Ramesh breached his duty of loyalty to Xechem when he misappropriated $605,539.15 of Xechem's money to give to his friends and family."); ¶ 96 ("Bhuwan breached his duty of loyalty to Xechem when he misappropriated

---

[10] The Court previously dismissed Plaintiff's tort claims, with prejudice, on the basis that pre-judgment tort claims cannot be assigned under New Jersey law. *See Integrated Solutions, Inc. v. Serv. Support Specialties, Inc.,* 124 F.3d 487, 490 (3d Cir. 1997).

$7,752.13 of Xechem money"); ¶ 121 ("Abhilasha breached her duty of loyalty to Xechem when she misappropriated $14,617 of Xechem money").

Second, even assuming that the conduct underlying Plaintiff's unjust enrichment claims does not actually sound in tort, Plaintiff fails to allege that he—or even Xechem—expected remuneration from any of the Defendants at the time that the challenged payments were made to them by Ramesh, *or* that any of the Defendants failed to provide such remuneration in exchange. *See VRG Corp.*, 135 N.J. at 554 (explaining that the "unjust enrichment doctrine requires that plaintiff show that it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant"). Whether it would be "morally" or "ethically" wrong for the Defendants to have benefited from the challenged payments is irrelevant to the issue of whether any of the Defendants were actually enriched beyond their contractual rights. This is particularly so given Plaintiff's concession that some—if not all—of the checks at issue may have been written to cover legitimate Xechem business expenses. *See* Sec. Am. Compl., ¶ 41.

Defendants' motion to dismiss this claim is therefore granted. *See, e.g., Nelson v. Xacta 3000 Inc.,* No. 08–5426, 2009 WL 4119176, at *7 (D.N.J. Nov. 24, 2009) (dismissing unjust enrichment claim after finding that "New Jersey law does not recognize unjust enrichment as an independent tort cause of action"); *Warma Witter Kreisler, Inc. v. Samsung Elecs., Am., Inc.,* No. 08–5380, 2009 WL 4730187, at *7 (D.N.J. Dec. 3, 2009) (dismissing unjust enrichment claim and noting that "Plaintiff does not claim that it failed to receive the printer for which it conferred a benefit on the Defendant; rather, Plaintiff's theory of recovery is based on the assertion that it was misled by Samsung as to the fitness of the printer and that as a result of Samsung's tortious conduct, Plaintiff is allowed to recover damages. Such allegations sound in tort."). Because

Plaintiff has already been given an opportunity to cure the pleading deficiencies in his unjust enrichment claims, such claims are now dismissed *with* prejudice.

4. **Breach of Fiduciary Duty and Duty of Loyalty Claims—Counts One, Three, Five, Six, Eight and Nine**

Counts One, Three, Five, Six, Eight and Nine allege, in pertinent part, that Defendants Ramesh, Bhuwan and Abhilasha respectively breached their fiduciary duties of loyalty to Xechem. In particular, Counts One, Five and Eight (captioned "Breach of Fiduciary Duty") allege that Defendants breached their respective fiduciary duties of loyalty to Xechem by engaging in self-dealing. Counts Three, Six and Nine (captioned "Breach of Duty of Loyalty") allege that Defendants breached their respective duties of loyalty to Xechem by misappropriating its money. The Court agrees with Defendants that the foregoing claims are in some ways redundant. Suffice it to say that Plaintiff alleges that each of the Defendants breached their respective fiduciary duties of loyalty to Xechem by: (1) engaging in self-dealing, and (2) misappropriating Xechem's funds. In seeking dismissal of the foregoing claims, Defendants urge the Court to apply the substantive law of the state of Delaware—not New Jersey. Plaintiff's Second Amended Complaint indicates, instead, that New Jersey law should apply to such claims. The Court agrees, as a general matter, that the possible laws to be applied are Delaware (Xechem's state of incorporation)[11] and New Jersey (Xechem's principal place of business and the state in which Defendants are allegedly domiciled).[12]

---

[11] Plaintiff's Second Amended Complaint, filed in related Civil Action No. 13-650—which is also pending before the Court—indicates that Xechem is incorporated in the State of Delaware. *See* Civil Action No. 13-650, Docket Entry No. 28, ¶ 43.

[12] *See* Sec. Am. Compl., ¶¶6-9.

### A.    Applicable Law

Generally speaking, since this Court exercises its diversity jurisdiction over this action, the law to be applied is that of the forum state—New Jersey. *See Am. Cyanamid Co. v. Fermenta Animal Health*, 54 F.3d 177, 180 (3d Cir. 1995). If a choice of law dispute arises, a federal court sitting in diversity applies the choice of law principles of the forum state. *See Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496–97, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Warriner v. Stanton,* 475 F.3d 497, 499–500 (3d Cir. 2007). In *P.V. v. Camp Jaycee*, the New Jersey Supreme Court held that the "most substantial relationship" test enunciated in the Restatement (Second) of Conflict of Laws § 188 applies to choice of law disputes arising under both contract and tort law. 197 N.J. 132, 136 (2008). New Jersey's "most significant relationship" test consists of two prongs. First, a court must examine the substance of the potentially applicable laws in order to determine if an actual conflict exists. *Id.* at 143 (citing *Lebegern v. Forman*, 471 F.3d 424, 430 (3d Cir. 2006)). If there is no actual conflict, the analysis ends and the court applies the law of the forum state. *See In re Ford Motor Co.*, 110 F.3d 954, 965 (3d Cir. 1997); *Rowe v. Hoffman—La Roche, Inc.*, 189 N.J. 615, 621, 917 A.2d 767 (2007). However, if a conflict is found, the court must then determine which state has the "most significant relationship" to the claim at issue, as analyzed under the Restatement (Second) of Conflict of Laws. *Camp Jaycee*, 197 N.J. at 136. This test is applied "on an issue-by-issue basis" and "is qualitative, not quantitative." *Id.* at 143.

Turning now to the first prong of New Jersey's "most significant relationship" test, the Court agrees with Defendant that there is an actual conflict because the statute of limitations for bringing tort claims in New Jersey is six years from the date of accrual, *see* N.J.S.A. § 2A:14-1,[13]

---

[13] In particular, the statute provides:

whereas Delaware imposes a three-year statute of limitations for breach of fiduciary duty claims, *see* 10 Del.C. § 8106.[14]  Based on the facts pled, the Court construes Plaintiff's breach of fiduciary duty claims as accruing at some point in 2007. (Sec. Am. Compl., ¶ 24).[15]  Thus, the apparent conflict between New Jersey's six year statute of limitations and Delaware's three year

> Every action at law for trespass to real property, for any tortious injury to real or personal property, for taking, detaining, or converting personal property, for replevin of goods or chattels, for any tortious injury to the rights of another not stated in sections 2A:14-2 and 2A:14-3 of this Title, or for recovery upon a contractual claim or liability, express or implied, not under seal, or upon an account other than one which concerns the trade or merchandise between merchant and merchant, their factors, agents and servants, shall be commenced within 6 years next after the cause of any such action shall have accrued.

N.J.S.A. 2A:14-1.

[14] In particular, the Delaware statute provides:

> No action to recover damages for trespass, no action to regain possession of personal chattels, no action to recover damages for the detention of personal chattels, no action to recover a debt not evidenced by a record or by an instrument under seal, no action based on a detailed statement of the mutual demands in the nature of debit and credit between parties arising out of contractual or fiduciary relations, no action based on a promise, no action based on a statute, and no action to recover damages caused by an injury unaccompanied with force or resulting indirectly from the act of the defendant shall be brought after the expiration of 3 years from the accruing of the cause of such action; subject, however, to the provisions of §§ 8108-8110, 8119 and 8127 of this title.

10 Del.C. § 8106.

[15] *See generally Fike v. Ruger*, 754 A.2d 254, 260 (Del. Ch. 1999) ("A cause of action accrues at the moment of the wrongful act, even if the plaintiff is ignorant of the wrong."); *Tevis v. Tevis*, 79 N.J. 422, 431 (1979) (stating that a cause of action in tort usually accrues "at the time of the commission of the wrong and the suffering of injury"). As discussed in greater detail below, Plaintiff provides no compelling legal argument or binding legal authority suggesting that his fiduciary duty claims accrued at a later date.

statute of limitations would be material in the adjudication of Plaintiff's breach of fiduciary duty claims inasmuch as such claims would be time-barred if Delaware law is found to apply.[16]

Before reaching the second prong of New Jersey's "most significant relationship" test, the Court notes that "[u]nder New Jersey's choice-of-law rules, the law of the state of incorporation governs internal corporate affairs." *Fagin v. Gilmartin*, 432 F.3d 276, 282 (3d Cir. 2005) (citing *Brotherton v. Celotex Corp.*, 202 N.J. Super. 148 (Law Div. 1985)); *see also North Am. Steel Connection, Inc. v. Watson Metal Products Corp.*, 515 Fed. Appx. 176, 182 n. 14 (3d Cir. 2013) ("Although New Jersey law governs NASCO's claims generally, Delaware law governs the internal affairs of a Delaware entity."). More specifically, "under the internal affairs doctrine, anyone controlling a Delaware corporation is subject to Delaware law on fiduciary obligations to the corporation and other relevant stakeholders." *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 386 (3d Cir. 2007) (citing *In re Topps Co. S'holders Litig.*, 924 A.2d 951, 960 (Del. Ch. 2007) (explaining that the law of fiduciary obligations is one of the most important ways a state regulates a corporation's internal affairs) and Restatement (Second) of Conflict of Laws § 306 (1971)). Xechem is a Delaware corporation. *See* Civil Action No. 13-650, Docket Entry No. 28, ¶ 43. Plaintiff's claims of breach of fiduciary duty and breach of duty of loyalty are all premised on the notion that each of the Defendants owed a fiduciary duty to Xechem by virtue of their respective roles within the company and that they each breached their respective duties by misappropriating Xechem's money and by engaging in other forms of self-dealing, resulting in financial injury to Xechem. This Court finds that such allegations—of duties owed by Ramesh, Bhuwan and Abhilasha to Xechem by virtue of their roles as director and officers of the company—fall squarely within the scope of "internal affairs" as contemplated by the internal

---

[16] Plaintiff's Complaint was filed in January 2013.

16

affairs doctrine. *See generally Edgar v. MITE Corp.*, 457 U.S. 624, 645 (1982) ("The internal affairs doctrine is a conflict of laws principle which recognizes that only one State should have the authority to regulate a corporation's internal affairs—matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders—because otherwise a corporation could be faced with conflicting demands."). To the extent Plaintiff attempts to argue that the claims at issue are distinguishable from those alleged in the *Intarome* case,[17] or do not otherwise fall within the internal corporate affairs doctrine because the claims are not brought by Xechem's shareholders, the Court finds Plaintiff's argument to be unconvincing. Although Plaintiff correctly notes that this action is not brought as a shareholders derivative action, Xechem—through Plaintiff—is suing its *own* former director and officers for: (1) allegedly engaging in self-dealing while acting in their capacity as officers of the company, and (2) for allegedly misappropriating the company's money, also while acting in their capacity as officers of the company. It would be difficult to conceive of a situation that could be any *more* "peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders" than the fact pattern alleged by Plaintiff in the Second Amended Complaint. *Edgar,* 457 U.S. at 645. Thus, pursuant to the internal corporate affairs doctrine, the Court begins its prong two analysis with the presumption that Delaware law governs claims relating to Xechem's internal corporate affairs.[18] *See Fagin,* 432 F.3d at 282.

---

[17] *Intarome Fragrance & Flavor Corp. v. Zarkades,* Civ. No. 07-873, 2009 WL 931036, at *14 (D.N.J. March 30, 2009).

[18] "The internal affairs doctrine, however, is not without exception. As stated in § 302(2) of the Restatement, '[t]he local law of the state of incorporation will be applied to determine such issues, except in the unusual case where, with respect to the particular issue, some other state has a more significant relationship to the occurrence and the parties, in which event the local law of the other state will be applied.' " *Intarome Fragrance & Flavor Corp. v. Zarkades,* Civ. No. 07-873, 2009 WL 931036, at *14 (D.N.J. March 30, 2009). Thus, the Court will proceed in its choice of law analysis to determine if New Jersey, nevertheless, has a more significant

17

The second step of the most significant relationship test is to weigh the factors enumerated in the section of the Restatement that corresponds to particular cause of action, in this case, § 309 of the Restatement (Second) of Conflict of Laws (1971).  Section 309 provides:

> The local law of the state of incorporation will be applied to determine the existence and extent of a director's or officer's liability to the corporation, its creditors and shareholders, except where, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the parties and the transaction, in which event the local law of the other state will be applied.

Restatement (Second) of Conflict of Laws § 309 (1971).  Section 6 of the Restatement (Second) of Conflict of Laws, in turn, provides:

> (1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.
> (2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include
>> (a) the needs of the interstate and international systems,
>> (b) the relevant policies of the forum,
>> (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
>> (d) the protection of justified expectations,
>> (e) the basic policies underlying the particular field of law,
>> (f) certainty, predictability and uniformity of result, and
>> (g) ease in the determination and application of the law to be applied.

Restatement (Second) of Conflict of Laws § 6 (1971).  Absent a statutory directive from the forum state, the Court looks to the considerations set forth in subsection two of § 6.  "Reduced to their essence, the section 6 principles are: "(1) the interests of interstate comity; (2) the interests

---

relationship to the parties and/or transactions in question.  *See generally* Restatement (Second) of Conflict of Laws § 302 cmt. b (1971) ("The principles stated in § 6 underlie all rules of choice of law and are used in evaluating the significance of a relationship, with respect to the particular issue, to the potentially interested states, the occurrence and the parties.").

of the parties; (3) the interests underlying the field of tort law; (4) the interests of judicial administration; and (5) the competing interests of the states." *Camp Jaycee*, 197 N.J. at 147.

Turning now to the § 6 factors, the first consideration—the interest of interstate comity— seeks "to further harmonious relations between states and to facilitate commercial intercourse between them." Restatement (Second) of Conflict of Laws § 6 cmt. d. In other words, "[i]t considers 'whether application of a competing state's law would frustrate the policies of other interested states.' " *Camp Jaycee*, 197 N.J. at 152 (citation omitted). In Delaware, "the purpose of an award of damages in a tort action is just and full compensation, with the focus on the plaintiff's injury and loss." *DeAngelis v. Harrison*, 628 A.2d 77, 81 (Del. 1993) (*citing Jardel Co., Inc. v. Hughes*, 523 A.2d 518 (Del. 1987)). In Delaware, the "public policy underlying statutes of limitation in general [is] to compel timely pursuit of claims and to avoid the adjudication of stale claims." *State ex rel. Brady v. Pettinaro Enters.*, 870 A.2d 513, 532 (Del. Ch. 2005). In New Jersey, as the Third Circuit has consistently identified, the policies underlying tort consist "primarily of compensation and deterrence." *Warriner v. Stanton*, 475 F.3d 497, 501 (3d Cir. 1007) (quoting *Schum v. Bailey*, 578 F.2d 493, 496 (3d Cir. 1978) (internal quotations omitted)). The policies underlying New Jersey's statutes of limitations are to "induce litigants to pursue their claims diligently so that answering parties will have a fair opportunity to defend" and "to spare the courts from litigation of stale claims." *Galligan v. Westfield Centre Serv., Inc.*, 82 N.J. 188, 192 (1980) (citations omitted). Thus, the Court finds that New Jersey and Delaware have similar policies regarding their statutes of limitations and general tort laws, such that application of Delaware law would not frustrate the policy of New Jersey.

The second factor—the interests of the parties—is "a factor of extreme importance in the field of contracts," but generally "plays little or no part in a choice-of-law question in the field of torts." *Fu v. Fu*, 160 N.J. 108, 123 (1999) (citing Restatement (Second) of Conflict of Laws § 145 (1971) comment b). "That is so because persons who cause unintentional injury 'usually act without giving thought to the law that may be applied to determine the legal consequences of this conduct.' " *Id.*

The third factor—the interests underlying the field of tort law—largely overlaps with the first factor. As discussed above, the Court has concluded that the public policies underlying Delaware's and New Jersey's tort laws and statutes of limitations are similar. For this reason, the Court finds that the third factor does not serve to change the presumptive choice of law under the internal affairs doctrine.

The fourth factor—the interests of judicial administration—requires the court to consider "issues such as practicality and ease of application." *Camp Jaycee*, 197 N.J. at 154. Here, the application of New Jersey law would be slightly easier than the application of Delaware law, but this factor, without more, is not sufficient to outweigh the internal affairs doctrine.

The New Jersey Supreme Court has described the last factor—the competing interests of the states—as "the most significant factor in the tort field." *Fu,* 160 N.J. at 125. This factor requires courts to consider:

> whether application of a competing state's law under the circumstances of the case "will advance the policies that the law was intended to promote." The "law" can be either the decisional or statutory law of a state. The focus of this inquiry should be on "what [policies] the legislature or court intended to protect by having that law apply to wholly domestic concerns, and then, whether those concerns will be furthered by applying that law to the multi-state situation." This is another way of saying that "[i]f a state's contacts [with the transaction] are not related to the policies underlying its law, then that state does not possess an interest in

> having its law apply. Consequently, the qualitative, not the quantitative, nature of a state's contacts ultimately determines whether its law should apply."

*Pfizer, Inc. v. Employers Ins. of Wausau*, 154 N.J. 187, 198 (1998).  The Court agrees with Defendants that Plaintiff's allegations of self-dealing and misappropriation of Xechem's money are, by their very nature, inextricably intertwined with the internal affairs of Xechem.  In Plaintiff's own words, Defendants' alleged misconduct violated the explicit directives of Xechem's Board of Directors and the terms of the convertible bond offering agreement.  (Sec. Am. Compl, ¶ 19, 22).  Plaintiff does not allege any substantive facts tying Defendants' alleged misconduct in this regard with the State of New Jersey.  Plaintiff, himself, is a citizen of Colorado. (Sec. Am. Compl., ¶ 3).  The only real connection to the State of New Jersey is that Defendants are alleged to be domiciled in New Jersey and that Xechem employed Defendants in its corporate offices in New Jersey.  (Sec. Am. Compl., ¶ 2).  "The domicile, residence, place of incorporation, and place of business of a defendant corporation are relevant, although not dispositive, considerations in a choice-of-law determination."  *Fu*, 160 N.J. at 133.  Moreover, "unlike more conventional torts, a breach of fiduciary duty by an officer or director based on actions causing the corporation to incur additional debt is not manifested through identifiable physical conduct or harm. As such, the corporation sustains an injury in the state of incorporation and wherever it has offices."  *In re Innovation Fuels, Inc.,* No. 13-1004, 2013 WL 3835827, at *6 (Bankr. D.N.J. 2013).  Absent any specific facts establishing a significant connection to New Jersey, the Court does not find that the weight of the fourth and/or fifth factors—which could arguably sway in favor of New Jersey—are sufficient to justify departure from the presumption of the internal affairs doctrine.

Thus, the Court concludes that Plaintiff's breach of fiduciary duty and breach of duty of loyalty claims are governed by the law of the state of Xechem's incorporation—Delaware law. *See, e.g., North Am. Steel Connection, Inc.*, 515 Fed. Appx. at 182 n. 14. (3d Cir. 2013) ("Although New Jersey law governs NASCO's claims generally, Delaware law governs the internal affairs of a Delaware entity.").

### B.      Analysis

Defendants move to dismiss Counts One, Three, Five, Six, Eight and Nine as time-barred.  Each of the foregoing counts allege that Defendants Ramesh, Bhuwan and Abhilasha breached their respective fiduciary duties of loyalty to Xechem by engaging in self-dealing and misappropriating its money.   As stated above, Delaware imposes a three-year statute of limitations for breach of fiduciary duty claims.  *See* 10 Del.C. § 8106; *Fike v. Ruger*, 754 A.2d 254, 260 (Del. Ch. 1999) ("Under Delaware law, a three-year statute of limitations applies to claims for breach of contract or breach of fiduciary duty.").  "A cause of action accrues at the moment of the wrongful act, even if the plaintiff is ignorant of the wrong." *Fike*, 754 A.2d at 26-261 (citation omitted).  Plaintiff's fiduciary duty claims, first asserted in January 2013, relate to matters occurring in 2007.  Such claims are therefore time-barred unless some basis exists to toll the running of that statute. *Id.*  Plaintiff "bears the burden of proving that tolling is available." *Id.*

Generally speaking, "the limitations period is tolled until such time that persons of ordinary intelligence and prudence would have facts sufficient to put them on inquiry which, if pursued, would lead to the discovery of the injury." *Fike*, 754 A.2d at 261.  Plaintiff makes no specific factual allegations—or legal arguments—suggesting that any of the Defendants attempted to fraudulently conceal their alleged misconduct.  To the contrary, a common sense

reading of the Second Amended Complaint allows the Court to draw the reasonable inference that Xechem was aware of Ramesh's alleged misappropriation and self-dealing—from which Bhuwan and Abhilasha's alleged liability flows—as of the date on which he was removed from office as CEO, President and Treasurer of the Xechem—July 5, 2007. (Sec. Am. Compl., ¶ 24). *See generally Iqbal*, 556 U.S. at 663.   Plaintiff has given the Court no basis on which to find otherwise.

"The theory of equitable tolling will stop the running of the limitations period 'for claims of wrongful self-dealing, even in the absence of actual fraudulent concealment, where a plaintiff reasonably relies on the competence and good faith of a fiduciary.'" *Fike*, 754 A. 2d at 261.   But even equitable tolling "will only last until they knew or had reason to know of the facts constituting the alleged wrong. *Id*.   As discussed above, the facts alleged in the Second Amended Complaint allow the Court to draw the reasonable inference that Xechem knew of the facts constituting Ramesh's alleged misconduct by the date on which he was removed from office as CEO, President and Treasurer of Xechem.   Plaintiff has given the Court absolutely no basis on which to find otherwise.

To be clear, Plaintiff has come forward with **no** legal argument **or** legal authority even suggesting that the statute of limitations should be tolled in this case.[19]   In fact, Plaintiff does not

---

[19] To the extent any aspect of Plaintiff's opposition brief should be construed as suggesting that the statute of limitations pertaining to his fiduciary duty claims should be tolled until the date on which he purchased all right, title and interest in any and all assets of Xechem—August 24, 2011—the Court sees no legal basis for tolling the statute of limitations in that manner.   To the contrary, Plaintiff concedes that he stands in Xechem's shoes in bringing this action.   In other words, there is no question that plaintiff, as assignee of Xechem's rights and interests, seeks redress for the damages allegedly sustained by Xechem. *See, e.g.*, Sec. Am. Compl., ¶¶ 49 ("Xechem has been injured by loss of the economic benefit . . . ."); 61 ("Ramesh damaged Xechem as a result of his acts"); 66 ("The Company has been harmed and incurred significant damages by Ramesh's breach of that duty of loyalty."); 90; 97; 115; 122.   A common sense reading of the Second Amended Complaint allows the Court to draw the reasonable inference

23

even raise an equitable tolling argument.[20]   As the Court clearly stated in its prior Opinion,
"[w]hile the Court is mindful of Plaintiff's *pro se* status, it is not the Court's responsibility to
engage in its own legal research in order to find legal authority to support Plaintiff's
arguments—nor would it be proper for the Court to do so.  Again, the Court has done its best,
under the circumstances, to assess Defendants' legal arguments, along with the arguments raised
by Plaintiff in opposition, despite Plaintiff's failure to cite to any legal authority in support of
same." November 13, 2013 Op. at 6.  The Court has also made every effort to liberally construe
Plaintiff's *pro se* submissions.  That being said, the Court cannot formulate and/or rule on legal
arguments that Plaintiff, himself, has not made.

As such, for the reasons set forth above, the Court finds that Plaintiff's breach of
fiduciary duty and breach of fiduciary duty of loyalty claims are time-barred.  Defendants'
motion to dismiss Counts One, Three, Five, Six, Eight and Nine is granted.  Counts One, Three,
Five, Six, Eight and Nine of Plaintiff's Second Amended Complaint are hereby dismissed *with
prejudice*.[21]

---

that Xechem was aware of Ramesh's alleged misappropriation and self-dealing—from which
Bhuwan and Abhilasha's alleged liability flows—as of the date on which he was removed from
office as CEO, President and Treasurer of the Xechem—July 5, 2007. (Sec. Am. Compl., ¶ 24).
*See generally Iqbal*, 556 U.S. at 663-664 ("Determining whether a complaint states a plausible
claim is context-specific, requiring the reviewing court to draw on its experience and common
sense.").  Plaintiff has given the Court no reasonable basis on which to find otherwise.

[20] To the contrary, it is Plaintiff's position that New Jersey's six-year statute of limitations should
apply to Plaintiff's breach of fiduciary duty claims.

[21] Even assuming, *arguendo,* that New Jersey law were to apply to Plaintiff's breach of fiduciary
duty claims, such claims would still be dismissed *with* prejudice inasmuch as New Jersey courts
have consistently held, as a matter of public policy, that tort claims cannot be assigned before
judgment. *See Integrated Solutions, Inc. v. Serv. Support Specialties, Inc.,* 124 F.3d 487, 490 (3d
Cir. 1997) (citing *Village of Ridgewood v. Shell Oil Co.*, 289 N.J. Super. 181, 673 A.2d 300,
307–08 (1996)); *Costanzo v. Costanzo*, 248 N.J. Super. 116, 121 (Law Div.1991) ("[I]n New
Jersey, as a matter of public policy, a tort claim cannot be assigned."); *see, e.g., In re O'Dowd*,
233 F.3d 197, 201 (3d Cir. 2000) ("A true purchase of the omitted claims would have been void

24

## CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss Plaintiff's Second Amended Complaint is **granted**.  Plaintiff's Second Amended Complaint is dismissed, in its entirety, *with* prejudice.  This case is hereby **closed**.

An appropriate Order accompanies this Opinion.

s/ Jose L. Linares
Jose L. Linares
United States District Judge

Date:  April 7, 2014

---

under the New Jersey common law prohibition against assigning prejudgment tort claims.").  Plaintiff does not dispute that a prejudgment tort claim cannot be assigned under New Jersey law; rather, Plaintiff maintains that a breach of fiduciary duty claim "is not necessarily a tort claim." (Pl. Opp'n Br. at 6).  Plaintiff cites to absolutely no legal authority in support of this position.  In any event, the Appellate Division has specifically recognized claims for breach of the duty of loyalty and breach of fiduciary duty, in the corporate context, as torts.  *See Wolfson v. Bonello,* 270 N.J. Super. 274, 291 n. 12 (App. Div. 1994) ("The alleged torts committed by Bonello included breach of the duty of loyalty, breach of fiduciary duty, waste of corporate assets, misappropriation of corporate opportunity and conversion."); *In re Innovation Fuels, Inc.,* 2013 WL 3835827, at *6 (recognizing that breach of fiduciary duty in corporate context is a tort); *see generally In re Estate of Lash,* 169 N.J. 20, 27 (2001) ("Breach of fiduciary duty is a tort.").  Plaintiff does not dispute that he asserts his claims of breach of duty of loyalty and breach of fiduciary duty on behalf of—or as assignee of rights belonging to—Xechem.  In light of the foregoing, Plaintiff has failed to state a claim of breach of duty of loyalty and/or breach of fiduciary duty that is plausible on its face.  *See, e.g., Conopco, Inc. v. McCreadie,* 826 F. Supp. 855, 867 (D.N.J. 1993) ("It is clear that under New Jersey law, choses in action arising out of tort are not assignable prior to judgment. Because Conopco asserts its claims of professional negligence and malpractice only as an assignee, those tort claims must fail as a matter of law.").